# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| LE-NATURE'S INC., et al. ) | Civil Action No. 10-304 |
| ) | |
| Debtors. ) | Bankruptcy Case No. 06-25454(MBM) |
| ) | |
| CHESTNUT RIDGE GROUP, L.P., ) | |
| SUCCESSOR BY MERGER TO C.S. ) | |
| ACQUISITION, L.P., ) | |
| ) | |
| Movant, ) | |
| ) | |
| v. ) | |
| ) | |
| INTERNATIONAL FIDELITY INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION

## I. INTRODUCTION

Pending before the Court is an appeal from a January 20, 2010 Order entered by the Bankruptcy Court in Bankruptcy Case No. 06-25454. (Docket No. 1). Appellant Chestnut Ridge Group, L.P ("Appellant") appeals the Bankruptcy Court's Order (Bk. Docket No. 3173[1]) denying its Motion to Enforce ("Motion to Enforce," Bk. Docket No. 2529) a previous order of the Bankruptcy Court. In the previous order, the Bankruptcy Court had approved the sale of the debtors' property to Appellant's predecessor, free and clear of all liens, claims interests and encumbrances. (Bk.

---

[1] For the purposes of this appeal, the Court considered the record on appeal as designated by the parties. Hereinafter, references to the record on appeal appear as "Bk. Docket No. __" reflecting their docket numbers in Bankruptcy Case No. 06-25454.

1

Docket No. 1526). In the Order now on appeal, the Bankruptcy Court denied Appellant's Motion to Enforce and ruled that: a mortgage held by Gregory J. Podlucky was not divested from and remains against the property; Appellant's predecessor assumed the risk of the existence of said Mortgage by taking the property through a quitclaim deed; and Appellant was barred by the terms of the agreements among the parties from asserting certain claims against the bankruptcy liquidation Trustee, the trust's assets, or the debtors' estates. (Bk. Docket No. 3173).

Based on the following, the decision of the Bankruptcy Court is AFFIRMED, as the record demonstrates that the Bankruptcy Court did not err in making said determinations.

## II. BACKGROUND

In 1997, Gregory Podlucky, CEO of Le-Nature's, Inc., received a mortgage and a note (the "Mortgage") on Le-Nature's Latrobe bottling facility from Le-Nature's, Inc. (f/k/a Global Beverage Systems, Inc.). In 2006, Le-Nature's, Inc. entered Chapter 11 bankruptcy.

On July 13, 2007, counsel for the bankruptcy Liquidation Trustee filed a Motion to Sell the Property "Free and Clear of Liens, Claims, Interests and Encumbrances" to Giant Eagle, Inc., subject to higher and better offers at a bankruptcy auction, pursuant to an Asset Purchase Agreement ("GE APA," (Bk. Docket No. 1459, Exh. B). (Bk. Docket No. 1459). Mr. Podlucky was not named as a respondent to the Motion, although it was served upon his attorney (Bk. Docket No. 1469), and the Mortgage was not listed in the motion, the GE APA, or the title insurance commitment accompanying the GE APA. (Bk. Docket No. 2913, Exh. G).

At the bankruptcy auction, Giant Eagle's bid was the highest and, on August 9, 2007, the Bankruptcy Court entered an Order approving the sale pursuant to the GE APA. (Bk. Docket No. 1526).

2

Before the closing, however, the Bankruptcy Court found that Giant Eagle had acted in bad faith and, therefore, entered an Amended Sale Order (Bk. Docket No. 1576) setting aside the bankruptcy sale, forbidding Giant Eagle from purchasing the property, and requiring the second highest bidder, Cadbury Schweppes Bottling Group, Inc. ("Cadbury"), to purchase it at its bid price.

Thereafter, on September 10, 2007, before the closing of the sale, the Bankruptcy Trustee, Giant Eagle, and Cadbury entered into a Settlement Agreement (Bk Docket No. 1595, Exh. A) which had the following effect. First, the court-ordered sale to Cadbury would go through, but Cadbury would immediately resell the property to a wholly-owned acquisition subsidiary of Cadbury, C.S. Acquisition, Inc., pursuant to an Amended Asset Purchase Agreement ("Cadbury APA")(Bk. Docket No. 3077, Exh. A). (*Id.*) Then, the subsidiary would be acquired by Chestnut Ridge, a subsidiary of Giant Eagle. (*Id.*) The settlement agreement specified that Giant Eagle and its affiliates would waive "any right to assert any claims under or in connection with the Cadbury APA, the Sale Order or the Amended Sale order after the closing of the sale of the [property] to Cadbury . . . , with only Cadbury or its successors (excluding Giant Eagle and other GE entities) having the right to assert or seek to enforce any such claims or rights against the Trustee and/or the Debtors' estates." (Bk. Docket No. 1595, Exh. A, ¶3(a)).

The Cadbury APA consists of an original Asset Purchase Agreement dated September 10, 2007 and a First Amendment to Asset Purchase Agreement dated October 9, 2007. (Bk. Docket No. 3077, Exh. A). The original Cadbury APA largely mirrored the GE APA, but as amended it eliminated the indemnification obligations on the part of the Trustee and a $2 million indemnification holdback in favor of the buyer. (Bk. Docket No. 1595, Exh. A). The Bankruptcy Court approved the Settlement Agreement on September 25, 2007. (Bk. Docket No. 1623).

On October 9, 2007, the sale of the property to CS Acquisition was completed, the settlement agreement became effective, and appellant Chestnut Ridge acquired and merged with CS Acquisition, thus becoming owner of the property. (Bk. Docket No. 1665).

On March 27, 2009, almost one and a half years later, Gregory Podlucky assigned the Mortgage to Appellee, International Fidelity Insurance Co. in satisfaction of another obligation. (Bk. Docket No. 2529 at 27-34). Appellee International Fidelity contacted Giant Eagle in April 2009, explaining that it did not believe that the mortgage had been divested by the bankruptcy sale because of lack of notice to Podlucky. (Bk. Docket No. 2529 at 116-18). On May 21, 2009, Appellee filed a foreclosure action in the Court of Common Pleas of Westmoreland County, initially naming Giant Eagle as the defendant and then naming C.S. Acquisition. (Bk. Docket No. 2529 Exh A, at 14-19).

On July 9, 2009, Appellant Chestnut Ridge filed the Motion to Enforce (Bk. Docket No. 2529), asking the Bankruptcy Court to determine whether the Podlucky Mortgage had been divested through the bankruptcy-court-approved sale of the property.

The Bankruptcy Court entertained extensive responses, replies, and briefs (Bk. Docket Nos.2682, 2684, 2690, 2981, 2982, 2994, 3077, 3106), heard argument in three separate hearings (Bk. Docket Nos. 2858, 3045, 3185), and accepted affidavits from counsel for the Appellee Trustee (Bk. Docket No. 2913), and counsel for Podlucky (Bk. Docket No. 2795).

On January 20, 2010 the Bankruptcy Court entered an Order denying the Motion to Enforce (Bk. Docket No. 3173), now on appeal before this Court. In the Order, the Bankruptcy Court made the following factual findings and legal conclusions:

1. The parties to the Cadbury APA relied upon a title company chosen by the buyer to conduct a search of liens and encumbrances on the Real Estate and to issue a Title Commitment and policy of title insurance in favor of buyer.

4

2. The title search and Title Commitment did not reveal the existence of the Mortgage.
3. As a result thereof, Gregory J. Podlucky, record holder of the Mortgage at the time of the Sale, was not named as a respondent in either the caption of the July 13, 2007 Motion to approve the Sale ([Bk.] docket no. 1459) (the "Sale Motion") or the caption of the July 13, 2007 Notice of Sale ([Bk.] docket no. 1461).
4. As a result thereof, the Mortgage was not identified in either the body of the Sale Motion or the body of the Notice of Sale, or any of the exhibits thereto.
5. As a result thereof, Gregory J. Podlucky was not identified at all (as the Mortgage holder or otherwise) in either the body of the Sale Motion or the body of the Sale Notice, or any exhibits thereto.
6. As a result thereof, the Sale Motion and the Sale Notice did not identify (I) the market value of the Sale Assets; or (ii) the identity and address of Gregory J. Podlucky, the record holder of the Mortgage; or (iii) the type, priority, face amount, balance owed and record location of the Mortgage, in violation of Local Bankruptcy Rule 9013-3(B)(1)(b), (d) and (e).
7. As a result thereof, the Sale Motion and Sale Notice did not apprise Gregory J. Podlucky that the seller intended to divest the Mortgage.
8. As a result thereof, the Sale Motion and Sale Notice failed to identify any statutory basis for divesting the Mortgage, in violation of 11 U.S.C. section 363(f).
9. The Cadbury APA provided that the sale of the Real Estate was by quitclaim deed without representation or warranty of any kind by the seller and that the buyer acknowledges that it conducted an independent investigation of all matters relating to or affecting the Real Estate as the buyer deemed appropriate and was proceeding with the Sale based solely upon such independent investigation.
10. The Settlement Agreement dated as of September 10, 2007 (Settlement Agreement") entered between R. Todd Nielson as Chapter 11 Trustee of Le-Nature's Inc., Giant Eagle, Ind. and Cadbury Schweppes Bottling Group, Inc. and the effect of the First Amendment to Asset Purchase Agreement entered into as of October 9, 2007, preclude Chestnut Ridge from asserting any rights or claims under or in connection with the Cadbury APA, the Sale Order, Amended Sale Order, related sale documents or the Real Estate, as against the Liquidation trustee, the Liquidation Trust, the assets of the Liquidation trust or the debtors consolidated estates.

(Bk. Docket No. 3173). The Bankruptcy Court then ordered that:

1. The Motion [for Enforcement] is denied in its entirety.
2. Gregory J. Podlucky did not receive sufficient notice of the intended effect of the Sale on the Mortgage, as was required by due process of law under the

5

> Fifth Amendment . . . and therefore the mortgage was not divested from, and remains against, the Real Estate to the extent, if any, provided by non-bankruptcy law.
> 3. In taking title to the Real Estate through a quitclaim deed without any representations or warranties by the seller and based upon its own acknowledged investigation which it deemed appropriate, buyer assumed the risk of the existence of the Mortgage.
> 4. By reason of the terms of the Settlement Agreement, Chestnut Ridge is barred from asserting any claims of any nature against the Liquidation Trustee, the Liquidation Trust, the Liquidation Trust's assets and the debtors' consolidated estates in relation to the Sale, the Real Estate, the Cadbury APA, the Sale Order and the Sale Amendment Order.
> 5. This Court makes no finding or determination with respect to whether and, if so, to what extent the mortgage is enforceable against Chestnut Ridge under non-bankruptcy law.

(*Id.*).

Appellant appealed the Bankruptcy Court's Order to this Court on March 5, 2010 and filed its Brief in support on March 23, 2010. (Docket Nos. 1, 10). Appellee International Fidelity, and Appellee Trustee Mark Kirschner, the Liquidation Trustee, filed their briefs on March 29 and April 7, 2010. (Docket Nos. 13, 14). Appellant filed its Reply Briefs on April 12 and 21, 2010. (Docket Nos. 15, 16).

In Appellant's Designation of Record for Appeal, Appellant characterizes the issues on appeal as follows:

> 1. Whether the Bankruptcy Court (McCullough, J.) erred when it concluded that the sale of real property free of liens and interests by the Bankruptcy Trustee to Appellant's predecessor under 11 U.S.C. §363(f) did not divest the Mortgage lien of Gregory Podlucky when there was sufficient credible evidence to support the finding that Gregory Podlucky had sufficient notice that his Mortgage lien would be divested through the sale.
> 2. Whether the Bankruptcy Court (McCullough, J.) erred in denying Appellant's Motion and concluding that the buyer assumed the risk of the existence of the Podlucky Mortgage.
> 3. Whether the Bankruptcy Court (McCullough, J.) erred when it concluded that Chestnut Ridge is barred from asserting any claims of any nature against the

> Liquidation Trustee, the Liquidation Trust, the Liquidation Trust Assets and the Debtors' Consolidated Estates in relation to the sale, the real estate, the Asset of Purchase Agreement, the Sale Order and/or the Sale Amendment Order related to the Bankruptcy matter.

(Bk. Docket No. 3222).[2] As these issues have been fully briefed, they are now ripe for decision.

## III. LEGAL STANDARD

This Court has appellate jurisdiction over final judgments, orders and decrees of a bankruptcy court pursuant to 28 U.S.C. § 158(a)(1). The Court reviews a bankruptcy court's findings of fact under a clearly erroneous standard and its conclusions of law under a de novo standard. *In re SubMicron Sys. Corp.*, 432 F.3d 448, 454 (3d Cir.2006).

A bankruptcy court's "findings of fact are clearly erroneous when, after reviewing the record, the appellate court 'is left with the definite and firm conviction that a mistake has been committed.'" *In re Piccoli*, Civ. Action No. 06-2142, 2007 WL 2822001 (E.D. PA. Sept. 27, 2007) (*citing Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985) (*quoting United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948))). Under this standard, "[i]t is the responsibility of an appellate court to accept the ultimate factual determinations of the fact-finder unless that determination is either (1) completely devoid of minimum evidentiary support displaying some hue of credibility or (2) bears no rational relationship to the supportive evidentiary data." *DiFederico v. Rolm Co.*, 201 F.3d 200, 208 (3d Cir.2000) (citations omitted). In reviewing the Bankruptcy Court's findings, the Court gives "due regard" to the Bankruptcy Court's credibility determinations. FED. R. BK. P. 8013.

## IV. DISCUSSION

---

[2] The Appellee Trustee sought to characterize the issues on appeal somewhat differently, but its Counterstatement of Issues (Bk. Docket 3249) was subsequently stricken from the record on appeal by stipulation. (Docket No. 11).

7

As a preliminary matter, the Court notes that, although both parties argue in their briefs that some statements made by Judge McCullough throughout the three hearings should be considered findings of fact, this Court will restrict its review of the Bankruptcy Court's findings of fact to those memorialized in the Order on appeal, considering the comments from the bench only as they elucidate the finalized findings of record. (Bk. Docket No. 3173).[3] Federal Rule of Bankruptcy Procedure 7052 provides, in part, that "Rule 52 F.R.Civ.P applies in adversary proceedings." FED.R.BK.P. 7052.[4] And, Federal Rule of Civil Procedure 52(a)(1) states that "[i]n an action tried on facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately. The findings and conclusions may be stated on the record after the close of evidence or may appear in an opinion or memorandum of decision filed by the court." Fed.R.Civ.P. 52(a)(1). Furthermore, Judge McCullough, speaking from the bench during the second hearing on this matter, explicitly stated that he was "not prepared to finalize [an order] yet." (Bk. Docket No. 3045 at 46). Since the Bankruptcy Court chose specifically which findings to include in its final Order, since it relied upon said findings in issuing the Order, and since this Court determines that said findings are sufficient to support the Order, as stated below, the Court need not undertake the exercise of determining which of Judge McCullough's many statements from the bench to invest with the authority of official findings of fact.

---

[3] Neither party actually contests the truth of the Bankruptcy Court's factual findings contained in the Order on appeal, but rather Appellant argues that other statements from the bench should be considered as additional findings, and then that different conclusions of law should be drawn from that totality of findings.

[4] FED.R.BK.P. 7052 applies in all adversary proceedings in bankruptcy, pursuant to FED.R.BK.P. 7001, and in all other contested matters in bankruptcy, pursuant to FED.R.BK.P. 9014.

8

In the Order on appeal, the Bankruptcy Court's findings focused on the language of the Motion to Sell and the Notice of Sale, finding that Podlucky was not named as a respondent in either one, that neither one identified the Mortgage, that neither one identified Podlucky at all, and that they therefore failed to identify the market value of the sale assets, the identity and address of the record holder of the Mortgage (Podlucky), and the type, priority, face amount, balance owed and record location of the Mortgage, in violation of a number of local bankruptcy rules. (Bk. Docket No. 3173, ¶¶ 3-6). The Bankruptcy Court concluded that the Motion to Sell and the Sale Notice did not apprise Podlucky that the seller intended to divest the Mortgage, and that they, therefore, "failed to identify any statutory basis for divesting the Mortgage in violation of 11 U.S.C. section 363(f)." (*Id.* at ¶¶ 7,8). Thus, it is clear to this Court that the Bankruptcy Court's conclusions of law – that notice was not provided and that, therefore, the Mortgage was not divested – were based solely on the language of the Motion to Sell, the Notice of Sale, and the exhibits thereto. As discussed below, the Bankruptcy Court made no findings as to whether the documents were properly served on Podlucky in his capacity as Mortgage holder or on his counsel.

> A. The Bankruptcy Court Did Not Err in Finding that the Motion to Sell did not provide Gregory J. Podlucky Sufficient Notice of the Intended Effect of the Sale on the Mortgage, and Therefore the Mortgage Was Not Divested From, and Remains Against, the Property.

Appellant argues that the Bankruptcy Court erred in concluding that the Mortgage was not divested from the property because: (1) the Motion to Sell (Bk. Docket No. 1459) was sufficiently specific to apprise Podlucky that the Mortgage would be divested by the sale; (2) Podlucky received sufficient notice to provide him with actual notice of the Motion to Sell and its potential effects on his interests; and (3) the Bankruptcy Court based its determination on factual findings that bear no

9

relationship to the issue of notice. (Docket No. 10 at 5-14).

Appellant's latter two arguments, regarding the sufficiency of notice and whether the Court based its determination on factual findings that were extrinsic to the question of notice are based largely on comments by the Bankruptcy Court during the hearings on the Motion. (*Id.*). As discussed above, such comments from the bench do not constitute findings of fact by the Bankruptcy Court and the Bankruptcy Court made clear in its final Order – and through other oral comments on the record – that its conclusions of law were not, in fact, based on any other findings. Much of the first hearing and half of the second concerned whether Podlucky had been given proper notice of the Motion to Sell, including whether it had been served upon him in his capacity as a Respondent or upon counsel representing him in the Bankruptcy Sale proceeding. (Bk. Docket Nos. 2858, 3045 *passim*). The Bankruptcy Court made no specific factual finding as to whether the Motion to Sell was served on Podlucky or his attorney, as it did not need to reach that question since it determined that, even if Podlucky and his attorney were properly served, the Motion to Sell did not provide sufficient notice of the pending divestiture.

Appellant argues, essentially, that even with the acknowledged defects in the Motion to Sell, Podlucky was sufficiently notified that the Mortgage would be divested by the bankruptcy sale. (Docket No. 10 at 5-7). Appellant contends that Podlucky received sufficient notice because the Trustee's Motion to Sell was sufficiently specific to apprise him of the divestiture, and the Motion to Sell, the Order setting the hearing on the Motion to Sell, and the Notice regarding the Auction and Hearing to Approve the Sale were served on Podlucky and on his attorney. (*Id.*). Appellant further points out that Podlucky's attorney was present during the sale motion hearing and that Podlucky knew of the existence of the Mortgage and was familiar with the business affairs of Le-Nature's and

the history of the property, in his capacity as former CEO of Le-Nature's. (*Id.* at 10). In short, Appellant argues that whatever formal defects existed in the Motion to Sell, the Sale Notice, and the exhibits thereto were cured by Podlucky's actual knowledge of the effects of the impending sale. (*Id.* at 11).

The Bankruptcy Court found that this was not the case, and this Court agrees. Looking at the specific language of the Motion to Sell, it is clear that, even if Podlucky was served with said Motion and read it in its entirety, it does not provide sufficient notice, and the presence of an attorney for Podlucky at proceedings regarding the bankruptcy of Le-Nature's does not establish that Podlucky was sufficiently notified to fulfill the requirements of due process. *Mullane v. Central Hanover Bank & Trust*, 339 U.S. 306, 314 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."); *In re: Marcus Hook Development Park*, 143 B.R. 648, 660 (Bankr. W.D.Pa. 1992)("The obvious purpose of this mandatory prior notice is to satisfy constitutional requirements where one's interest in property will be adversely affected as a result of judicial action."). Therefore, although the parties spent significant time arguing the issue before the Bankruptcy Court and then in briefs before this Court, the Bankruptcy Court did not rely on whether Podlucky, *in his capacity as holder of the Mortgage*, or his attorney, *who was representing him in that capacity*, were properly served in those capacities; instead, the Bankruptcy Court examined the language of the Motion to Sell and accompanying documents and determined that even if Podlucky had been served, the documents themselves did not provide sufficient notice.

The general standard for determining if sufficient notice was provided is one of

reasonableness: was the "notice reasonably calculated, under all the circumstances, to apprise" Podlucky of the potential divestiture? *Mullane*, 339 U.S. at 314. In the context of a bankruptcy sale free and clear of liens, Bankruptcy Code Section 363(f) specifies that:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). The Motion to Sell purported to rely on the consent of any lienholders, *see* Bk. Docket No. 1459 at ¶ 28 ("In this case, the Trustee believes that all parties asserting Interests in the Property to be sold pursuant to the Motion have consented to the sale."), but Podlucky had not consented. Although the title of the Motion to Sell ("Motion of Chapter 11 Trustee for an Order (A) Approving Sale of Property Free and Clear of Liens, Claims, Interests and Encumbrances; and (B) Granting Related Relief ") indicated that it was being sold free and clear of all liens, a reading of the Motion shows that this is not the case since paragraph 19 indicates that tax liens and "permitted encumbrances," as defined by the Giant Eagle Asset Purchase Agreement were not being divested. (*Id.* at ¶ 19).[5] And, the GE APA states that "permitted encumbrances" are those appearing on the Land America Lawyer's Title Commitment, which was not attached to either the Motion or the GE

---

[5] The contradiction between the title of the Motion to Sell and its text referring to liens and encumbrances that would not be divested creates, at the very least, an ambiguity. Some courts have held that "[h]olders of liens that may be adversely affected are entitled to unambiguous notice and adequate opportunity to reflect and to respond." *In re Metzger*, 346 B.R. 806, 815 (Bankr. N.D. Cal. 2006).

APA. (Bk. Docket No. 1459, Exh. B) And, in any case, the Land America Lawyer's Title Commitment does not mention Podlucky's Mortgage. (Bk. Docket No. 2913, Exh. G). Thus, a reasonable person reading the Motion to Sell would not be apprised of the potential divestiture of the Mortgage, even if he were to follow up and read the GE APA. Accordingly, the Bankruptcy Court did not err in finding that Podlucky had not been provided sufficient notice and that, therefore, the Mortgage was not divested.

> B. The Bankruptcy Court Did Not Err in Finding that Appellant's Predecessor Assumed the Risk of the Existence of the Mortgage by Taking Title to the Property through a Quitclaim Deed.

In its next issue on appeal, Appellant objects to the Bankruptcy Court's interpretation of the Cadbury APA, the Settlement Agreement, and the Settlement Order, arguing that Appellant's predecessor, CS Acquisitions, did not assume the risk of the existence of any liens. (Docket No. 10 at 14-20). As a factual matter, the Bankruptcy Court found that "the Cadbury APA provided that the sale of the Real Estate was by quitclaim deed without representation or warranty of any kind by the seller and that the buyer acknowledges that it conducted an independent investigation of all matters relating to or affecting the Real Estate as the buyer deemed appropriate and was proceeding with the Sale based solely upon such independent investigation." (Bk. Docket No. 51.) This factual finding is borne out by the record, in that the Cadbury APA specifies that

> Buyer hereby acknowledges and agrees that neither Seller, the Debtor nor the Broker (as defined below) makes or has made any representations or warranties whatsoever, express or implied, with respect to any matter relating to the Property (including, without limitation . . . the title of the Property (or any portion thereof), . . . or any other matter or thing relating to the Property or any portion thereof), except to the extent provided in Seller's representations and warranties set forth in Section 5 hereof. . . . Accordingly, except only for such surviving representations, Buyer will

13

accept the Property at the Closing "AS IS, "WHERE IS," and "WITH ALL FAULTS."

(Bk. Docket No. 3077, Exh. A, Section 7).

The Bankruptcy Court then made a conclusion of law that "[i]n taking title to the Real Estate through a quitclaim deed without any representations or warranties by the seller and based upon its own acknowledged investigation which it deemed appropriate, buyer assumed the risk of the existence of the Mortgage." (Bk. Docket No. 51).

Appellant characterizes this issue as whether the Trustee can be indemnified by Appellant or its predecessors for the Trustee's own omissions or errors, i.e. omitting the listing of the Podlucky Mortgage from the agreements. (Docket No. 10 at 14-20). This is an unnecessarily circuitous and misleading view of the issue. There is no claim for indemnification involved; the Trustee is not seeking to be indemnified by Appellant. Rather, this is a question of contract interpretation; the rights and obligations of the parties are defined by the agreements they undertook, pursuant to which Appellant's predecessor took on the risk itself (not the obligation to indemnify Trustee for its risk). The Cadbury APA provided that the sale was "AS IS, "WHERE IS," and "WITH ALL FAULTS," and these were the terms under which Appellant's predecessor took the title. (Bk. Docket No. 3077, Exh. A, Section 7). While a typical Section 363 bankruptcy sale might apportion the rights and duties differently, Appellant took the title pursuant to the specific terms of the Cadbury APA, the Settlement Agreement, and the Settlement Order, all of which intervened between the Trustee and the Appellant's predecessor to re-define the apportionment of rights and duties.[6] Thus, while in a

---

[6] As part of the overall indemnification argument, Appellant argues repeatedly that the Trustee prepared the Cadbury APA and the Settlement Agreement, and that therefore they should be construed strictly against the Trustee. (Docket Nos. 10 at 16; 16 at 7). There is no evidence of record

different transaction a Seller might have a duty to inform a Buyer of any outstanding liens, here the Seller/Trustee had no such duty. In the words of the Bankruptcy Court, "[t]he terms of the agreement were that the Trustee wasn't doing anything and the buyer was assuming the responsibility, and the buyer bought a title policy to take care of the liens." (Bk. Docket No. 3045 at 38).[7] Thus, this is not, as Appellant claims "an attempt by the Trustee to obtain indemnification for its <u>own</u> alleged negligence," since Trustee had no duty which it neglected to perform. (Docket No. 16 at 7). Rather, the Trustee is seeking to enforce the terms of the agreement, as the Bankruptcy Court recognized.

Accordingly, the Bankruptcy Court did not err when it found that in taking title to the property through a quitclaim deed without any representations or warranties by the Trustee and based upon its own acknowledged investigation which it deemed appropriate, Appellant's predecessor assumed the risk of the existence of the Mortgage. (Bk. Docket No. 3173).

C. The Bankruptcy Court's Determination that the Settlement Agreement Barred Appellant from Asserting Certain Claims Against the Liquidation Trustee, the Liquidation Trust, the Liquidation Trust's Assets and the Debtors' Consolidated Estates Was Not an Advisory Opinion.

Finally, Appellant takes issue with the Bankruptcy Court's fourth decree, arguing that the

---

that the Trustee drafted the documents, and the Court notes that all parties to the agreements were sophisticated business practitioners negotiating at arms length.

[7]

Furthermore, the GE APA, which would have controlled the sale of the property to Giant Eagle, before it was superseded by the Cadbury APA and the Settlement Agreement, was also an "AS IS" sale. (Bk. Docket No. 1459, Exh. B, § 7). The GE APA did contain some specific indemnification provisions, which were mostly subsequently removed from the Cadbury APA, but even those indemnification provisions would have expired after one year, before the Mortgage claim at issue here was asserted by Appellee International Fidelity. (*Id.* at § 10 ("10.3 . . . the Sellers' representations . . . shall survive the Closing for a period of one (1) year.")).

15

Bankruptcy Court erred by issuing an advisory opinion when it concluded that the Settlement Agreement precludes Chestnut Ridge from asserting any rights or claims under or in connection with the Cadbury APA, the Sale Order, Amended Sale Order, related sale documents or the Real Estate, as against the Liquidation trustee, the Liquidation Trust, the assets of the Liquidation Trust or the debtors' consolidated estates. (Docket No. 10 at 20-23). However, the Bankruptcy Court made clear during the proceedings that it considered the question of the interpretation of said agreements to be squarely before it. (*See, e.g.*, Bk. Docket No. 3045 at 47 ("Well, let me just say out loud halfway through this argument today I realized we were focused on the wrong thing. . . . But, in any event, it seems to me that what we have to do is interpret the agreements we've got.")). And, Appellant's attorney requested and was granted the opportunity to brief that issue. (*Id.* at 39 ("I would ask that we be given an opportunity to argue, to prepare a brief for the Court, arguing our position on the interpretation of these contracts, how it affects the duties of the trustee with regard to the sale."), 44 ("MR. BURNS: I would like to look at all the agreements and brief the Court on the issue of what effect it [the Settlement Agreement] had on the duties or the risk retained by the trustee as a result of the sale. / THE COURT: All right.")). All of the parties were aware that the question was before the Bankruptcy Court; the question was central to a determination of the rights of the parties under the agreements (which was the very subject of the Motion to Enforce being argued); the Bankruptcy Court provided all parties with the opportunities to argue the question; and the parties actually did argue the question. Therefore, this Court finds that the Bankruptcy Court's ruling on the effect of the Settlement Agreement on the rights of Appellant to assert certain claims against the Trustee was a ruling on a true legal controversy, not purely advisory, and it will be upheld. *See Armstrong World Industries, Inc. by Wolfson v. Adams*, 961 F.2d 405, 410 (3d Cir. 1992).

Article III, section 2 of the United States Constitution requires that a party allege an actual case or controversy. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101. Parties "must demonstrate a 'personal stake in the outcome' in order to 'assure that concrete adverseness which sharpens the presentation of issues' necessary for the proper resolution of constitutional questions." *Id.* (*quoting Baker v. Carr*, 369 U.S. 186, 204 (1962)). In the words of the Court of Appeals for the Third Circuit, to satisfy this requirement, "an action must present '(1) a legal controversy that is real and not hypothetical, (2) a legal controversy that affects an individual in a concrete manner so as to provide the factual predicate for reasoned adjudication, and (3) a legal controversy so as to sharpen the issues for judicial resolution." *Armstrong*, 961 F.2d at 410 (*quoting Int'l Bhd. of Boilermakers v. Kelly*, 815 F.2d 912, 915 (3d Cir. 1987)).

In the present case, as discussed above, the rights and duties of the various parties under the various agreements, including the Settlement Agreement, were centrally before the Bankruptcy Court. And, that legal controversy as to the proper distribution of rights and duties among the parties (1) was real and not hypothetical, (2) affected the parties in a concrete manner, and (3) sharpened the issues for judicial resolution. The fact that Appellant had not brought a specific claim against the Trustee, which could then be barred by the terms of the Settlement Agreement, did not render the question of whether such claims were waived purely hypothetical. Indeed, the parties spent significant time arguing before the Bankruptcy Court about the effects of any waiver in the Settlement Agreement, both orally and through briefing, and the Bankruptcy Court recognized that said waiver was part of the structure of the agreements which Appellant sought to enforce. Accordingly, the Bankruptcy Court's determination regarding said waiver was based on a case or controversy before it, and it was not an advisory opinion.

17

This Court recognizes that Appellant's primary reason for arguing that this portion of the Bankruptcy Court's Order constitutes an advisory opinion is likely a concern about the potential preclusive effect of its determination on any future claims. This Court takes no position on the potential *res judicata* or estoppel effects of the Bankruptcy Court's Order, holding only that the question was properly before the Bankruptcy Court as part of a real, adversary case in controversy, and, therefore, the Bankruptcy Court's answer to that question was not advisory.

## V. CONCLUSION

Based on the foregoing, the Court concludes that the Bankruptcy Court did not err when it found that: the sale of property to Appellant's predecessor failed to divest Mortgage; Appellant assumed the risk of any lien that was not divested by the sale; and, under the terms of the Settlement Agreement, Appellant was barred from asserting any claims in relation to the sale, the property, the Cadbury APA, the Sale Order, and the Sale Amendment Order against the Liquidation Trustee, the Liquidation Trust, the Trust's assets, and the debtors' consolidated estates.

Accordingly, the appeal of Chestnut Ridge is DENIED, and the January 20, 2010 Order of the Bankruptcy Court is AFFIRMED. An Appropriate Order follows.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

DATE: June 23, 2010
cc/ecf: All counsel of record.

    Honorable M. Bruce McCullough
    United States Bankruptcy Judge